

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. T. M. Trimble
First Assistant State Superintendent
Austin, Texas

Dear Sir:

Opinion No. O-3422
Re: Spearman Independent
School District and
the laws governing
its operation.

In your letter of April 16, 1941, you request our opinion in response to a number of questions concerning the Spearman Independent School District, created by special act of the Legislature in June, 1920. H. B. 70, Ch. 73, p. 226, Special Laws of Texas, 3rd Called Session, 36th Legislature, Your first question is:

"Can the Spearman Independent School District change over and operate under the general laws of the State of Texas? If so, what steps would be necessary?"

We have no statutes directly authorizing such a "change over" as you mention. Article 2767, Revised Civil Statutes, provides a method for abolishing independent school districts, those created by special acts as well as those organized under the general laws. Articles 2767a to 2767f, inclusive, should be considered in connection with any such move. If the Spearman Independent School District was created out of territory containing two or more common school districts, then, if the District should be abolished, the common school districts would resume their prior status, under Article 2767f. Otherwise, upon abolishment of the District, its territory would be subject to formation into a new district or districts, common or independent, or annexation to other districts, depending upon facts and circumstances of which we are not advised.

Since your second question depended upon an affirmative answer to your first question it need not be noticed.

Your third question reads:

"Can the Spearman Independent School District operate partly under the general law and partly under the special law?"

As a general proposition the District must operate under the terms of the special act creating it. Smith vs. Morton Independent School District, 85 S. W. (2d) 853. However, certain laws of a general nature have been enacted since the District was created which apply to it. Your question is answered affirmatively in this way: It must operate under the special law creating it, as well as in accordance with applicable general laws.

Your fourth question is:

"Can the board of trustees of the Spearman Independent School District levy an amount in excess of 25 cents on the hundred dollars valuation for 'sinking fund' purposes when specifically restricted to 25 cents for such purposes under the special act by which the district was created?"

Sections 17, 19 and 21 of said H. B. 70, 3rd Called Session, 36th Legislature, read:

"Sec. 17. The board of trustees of the Spearman Independent School District is hereby authorized to issue bonds and borrow money on the credit of said district for the purposes set forth and in the manner prescribed by the general laws of the State as now or hereafter existing, pertaining to independent school districts; and they shall expend such moneys when collected, or any part of same in the manner and for the purposes set forth in the general laws of the State, as now or hereafter existing, governing independent school districts.

"Sec. 19. The board of trustees of said Spearman Independent School District shall have the power to levy and co lect an annual ad val-orem tax, not to exceed the Constitutional limit as is now or hereafter may be adopted, for the maintenance of the schools therein, and a tax not to exceed twenty-five cents on the one hun-dred dollars valuation on such taxable property for the purchase of sites and for purchasing, constructing, repairing, and equipping public free school buildings within the limits of said district; provided that the amount of mainten-ance tax, together with the amount of bond tax, shall never exceed the Constitutional limit as is now or hereafter may be adopted.

"Sec. 2 . The provisions of this Act shall be cumulative of all general laws now in force, or to be hereinafter enacted, governing independ-ent school district, their manner of creating debts, levying and collectin taxes, except when the same is in conflict with the provisions of this Act."

At the time said House Bill was enacted the con-stitutional limitation was fifty cents on the one hundred dollars valuation for combined maintenance and building purposes. Article 7, Sec.2. However, on November 2, 1920, the people of Texas amended such section of the Constitu-tion raising such limitation to one dollar on the hundred dollars valuation. And, in 1921, the Legislature enacted into law H. B. 118, Ch. 24, p. 56, Gen. Laws, 37th Legis-lature, enabling school districts, includi g independent districts created by special law (Sec. 13), to take advan-tage of the constituti nal amendment of November, 1920. See Articles 2784 to 2796, Revised Civil Statutes. Said Article 2784 now prescribes the taxing limitation on this District. Your fourth question is therefore answered in the affirmative. However, your attention is called to subdivision 4 of Article 2784, requiring the consent of the voters to any such increase.

The seventh question submitted by you reads:

"Does Section 17 govern in the matter of the amount that may be levied for buildings, etc., or is this governed by the 25 cent limitation in Sec. 19?"

What we have said in answer to the fourth question indicates the answer to this one. The District may proceed under Section 17, bound by the limitations set forth in Article 2784, and disregarding the twenty five cent limitation found in Section 19 of the Special Act.

The fifth interrogation includes two questions, reading:

"Where the board of equalization consists entirely of members of the School Board, which can be done under the provisions of the act creating said district, are the acts of such board of equalization valid? If a member of the board other than the president presides over the board of equalization, would the acts of such board of equalization be binding?"

Section 8 of said House Bill 70 reads:

"After every annual assesment of the property of said district for taxation, as herein provided, the board of trustees shall appoint either of their own members or other suitable persons whose duty it shall be to act as a board of equalization, which said board of equalization shall be composed of three members and shall make and subscribe to an oath administered by the president or secretary of the board of trustees, or by any officer authorized to administer oaths, that they will faithfully and impartially equalize the assessed value of the property of the district to the best of their skill and ability; and it is further provided that the president of the board of trustees shal be ex-officio member and chairman of the board of equalization, and said board of equalization shall have all the power and authority now c onferred by law upon commissioners courts, when sitting as a board of equalization in fixing property values, and shall be governed by the law applying to commissioners courts when sitting as a board of equalization, as to notice and hearing on raises of property value."

While the trustees of an independent district organized under general laws may not appoint themselves to serve as the board of equalization (St. Louis S.W. Ry. Co.

vs. Naples Ind. Sch. Dist. 30 S. W. (2d) 703), it is expressly provided in Section 8 that the trustees of the Spearman District may ap oint the Equalization Board from their own number. The provision in Article 2791, Revised Civil Statutes, to the effect that when an independent district has its own assessor the assessment is to be equalized "by a board of equaliza ion appointed by the board of trustees" was inserted by an amendment to the statute in 1923. It is a general provision and no intention to repeal Section 8 of said H. B. 70 is manifest. The first of the two questions immediately above is answered in the affirmative. We do not feel like attempting to give a categorical answer to the second of these questions which would be applicable in all cases, regardless of surrounding facts and circumstances. We would observe that the president of the board should and we have no doubt does and will continue to strictly follow the statute in this respect, thus eliminating this question.

The sixth question is:

"Where the board of equalization is to consist of others than members of the board of trustees of such school, how many such persons should be appointed to such board of equalization and must the President of the Board of Trustees serve as Chairman of the board of equalization?"

Our interpretation of Section 8 is that such a board as that mentioned in this question should be composed of the president of the school board as chairman and three appointed members.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By    s/   Cecil C. Cammack
                    Assistant

CCC:lh

APPROVED: OPINION COMMITTEE

APPROVED APR 30, 1941

By    BWB    Chairman

s/ Glenn R. Lewis

ACTING ATTORNEY GENERAL OF TEXAS